U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

MAR 21 2016

TONY R. MOORE CLERK
BY _____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

b

| | |
|---|---|
| DARREL GRANT LEDEE | CIVIL ACTION NO. 1:14-CV-00096 SECTION "P" |
| VERSUS | JUDGE TRIMBLE |
| DAVID MORR, et al. | MAGISTRATE JUDGE PEREZ-MONTES |

## REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Before the Court is a civil rights complaint filed pursuant to 42 U.S.C. § 1983, *in forma pauperis*, by pro se plaintiff Darrel Grant LeDee ("LeDee") on January 16, 2014 (Doc. 1) and amended on June 18, 2014 (Doc. 13). The sole remaining defendant is Corrections Corporation of America ("CCA") (then operator of Winn Correctional Center in Winnfield, Louisiana).

LeDee complains that, since he has been incarcerated in WCC, he was denied medical care and appropriate food for his anemia, malnutrition, severe weight loss, and Crohn's Disease. LeDee contends he weighed 155 pounds when he entered WCC, but now weighs only 117 pounds. LeDee contends that a high calorie diet was prescribed for him by the medical department, but Trinity refused to allow the food service employees to provide LeDee with an appropriate diet, Patricia Thomas (the medical director at WCC) cancelled the diet plan, and CCA refused to authorize LeDee's special diet. LeDee contends that, when he complained about the cancellation of his special diet to Thomas, she told him that CCA could cancel any

medical treatment prescribed by a doctor. LeDee asks for a jury trial and monetary damages.

CCA answered the complaint, requested a jury trial (Docs. 28), and filed a motion for summary judgment (Docs. 73, 74) which was denied (Doc. 84). The District Court concluded that it was unclear whether LeDee was still prescribed a nutrition support diet and was still receiving those meals,[1] and ordered CCA to supplement its motion for summary judgment by addressing the issue of whether LeDee had been injured by the alleged constitutional violation (Doc. 84).

CCA filed a second motion for summary judgment (Doc. 91), to which LeDee has not responded. CCA's second motion for summary judgment is now before the Court for disposition.

---

[1] In its previous Report and Recommendation (Doc. 79, pp. 15-16/18), the Court made the following findings:

> It is not clear from the record before this court whether LeDee received the prescribed diets and booster shakes that were repeatedly prescribed by the WCC physician. It appears from the medical records that the physician's dietary prescriptions had to be approved by a CCA doctor in Arizona, Dr. Hegmann, before they could be implemented and that Dr. Hegmann did not give his approval or disapproval in a timely fashion.
>
> CCA points out that LeDee was prescribed the diet he seeks by Dr. Kuplesky; however, CCA fails to show whether Dr. Hegmann or some other CCA physician with oversight authority authorized LeDee's prescribed diets and booster shakes each time they were prescribed. There is nothing in the record concerning CCA's policies for providing special diets as prescribed by the prison physician.
>
> LeDee states in his affidavit that he has received the "Nutrition Support Diet" three times since 2009 (Doc. 69). LeDee contends one of those occasions was when the Trinity food service supervisor gave him the meal with an additional 500 calories on January 9, 2015, but that Benjamin Sweat denied him that meal on January 10, 2015 (Doc. 69). LeDee further states in his affidavit that he only once ate two regular meal trays during one meal (Doc. 69).
>
> WCC Medical Director Daniel Marr states in his February 5, 2015 affidavit that LeDee is still prescribed the nutritional support diet and is receiving those meals (Doc. 73). LeDee states in his affidavit that, on February 28, 2015, Warden Nicole Walker placed him in lockdown and his special diets were cancelled (Doc. 69).

Summary of Medical Records

    1. Previously Submitted Medical Records

In December 2005, LeDee was transferred to WCC from Caldwell Correctional North (Doc. 30, Ex. 1, p. 38.450; Doc. 48, Ex. 1, p. 38/450). LeDee's medical transfer summary from Caldwell Correctional North stated that he had a history of insomnia and depression and had not eaten in six days (his mother and daughter had both just died) (Doc. 30, Ex. 1, p. 38l/450). LeDee's December 2005 WCC health appraisal states that he was 5'10" tall and weighed 139 pounds (Doc. 30, Ex. 1, p. 40/450). WCC lists LeDee's mental health problems as major depression, impulse control disorder, psychosis NOS, and anxiety NOS (Doc. 30, Ex. 2, p. 352/450). On December 13, 2005, LeDee weighed 139 pounds (Doc. 30, Ex. 1, p. 40/450).

LeDee's Department of Public Safety and Corrections Master Record shows that LeDee was 5'11" tall and weighed 135 pounds in 2006 (Doc. 30. Ex. 2, p. 317/450). At a health screening on January 3, 2006, LeDee was six feet tall and weighed 145 pounds (Doc. 30, Ex. 2, p. 315/450).

LeDee weighed 142 pounds on July 11, 2006 (Doc. 30, Ex. 2, p. 16/450) and he weighed 136 pounds on July 14, 2006 (Doc. 30, Ex. 2, p. 6/450). LeDee weighed 148 pounds on August 15, 2006 (Doc. 30, Ex. 2, 5/450). LeDee weighed 150 pounds on October 18, 2007 (Doc. 30, Ex. 1, p. 411/450). LeDee complained in July 2008 that he was losing weight and needed a special diet, and he was told to make a sick call (Doc. 30, Ex. 1, p. 17/450). LeDee weighed 131.6 pounds on September 22, 2008, 135 pounds

3

on October 15, 2008, and 136 pounds on December 1, 2008 (Doc. 30, Ex. p. 406-407/450).

In 2009 and 2010, LeDee suffered from a fractured and infected tooth for which he had surgery (Doc. 30, Ex. 2, pp. 27-40, 284/450). On December 9, 2009 and February 25, 2010, LeDee told Mental Health that he was not able to eat (and take his medication with food) because of his dental problem (Doc. 30, Ex. 2, p. 55, 68/450). In 2009, LeDee also complained to the medical department that his tooth pain prevented him from eating and caused extreme headaches and dizziness (Doc. 30, Ex. 1, pp. 10-14/450). There do not appear to be any WCC medical records that include LeDee's weight in 2009 and 2010.

LeDee was given permission to go to "medical" daily to get his Boost (or generic equivalent) on January 27, 2011 (Doc. 30, Ex. 1, p. 318/450). LeDee's medical records show that, on April 1, 2011, LeDee complained that his Nutrition Support Diet had been cut back, but on May 5, 2011, LeDee was informed that it had been ordered (Doc. 30, Ex. 1, p. 6/450). LeDee's WCC medical records also show that the doctor prescribed him: (1) a nutrition support diet from October 22, 2009 through October 22, 2010 (Doc. 30, Ex. 2, p. 282/450); (2) a nutrition support diet and shakes from October 28, 2011 through April 28, 2012 (Doc. 30, Ex. 1, pp. 275, 333/450); (3) a nutrition support diet from December 12, 2009 through June 12, 2010 (Doc. 30, Ex. 1, p. 280/450); (4) a nutrition support diet from May 19, 2010 through May 19, 2011 (Doc. 30, Ex. 1, p. 277/450); (5) a nutrition support diet from April 22, 2011 through April 22, 2012 (Doc. 30, Ex. 1, p. 276/450); (6) nutrition support with shakes at each

meal from October 28, 2011 through April 28, 2012; and (7) nutrition support with shakes at each meal from February 20, 2012 through February 10, 2013 (Doc. 30, Ex. 1, p. 269-270, 274/450). In November 2011, LeDee complained that Patricia Thomas told him that his prescribed diet and Boost had to be approved by CCA, and the response had been to discontinue the Boost on October 28, 2011 (Doc. 30, Ex. 1, p. 5/450). Therapeutic diet requests were made for each of these diet prescriptions.

LeDee weighed 127 pounds in February 2012 (Doc. 30, Ex. 2, p. 414/450). On February 10, 2012, LeDee was prescribed three Boost shakes per day (Doc. 30, Ex. 1, p. 2/450). LeDee weighed 127.4 pounds on July 5, 2012 (Doc. 30, Ex. 1, p. 325/450). On June 7, 2012, LeDee complained that he wanted the Boost and nutrition support diet again due to his Crohn's disease, dizziness, weakness, and constant hunger; he weighed 133 pounds (Doc. 30, Ex. 1, p. 306/450). LeDee weighed 127.4 pounds on July 5, 2012 (Doc. 30, Ex. 1, p. 325/450). On November 1, 2012, LeDee complained of abdominal pain and weight loss, and he weighed 122 pounds (Doc. 30, Ex. 1, p. 319/450). LeDee weighed 122.8 pounds on November 1, 2012 (Doc. 30, Ex. 1, p. 310/450). A nutrition support diet was prescribed for LeDee from September 5, 2012 through September 5, 2013 (Doc. 30, Ex. 1, p. 268/450), and from November 29, 2012 through November 29, 2013 (Doc. 30, Ex. 1, p. 267/450). LeDee was also given permission to go to "medical" daily to get his Boost (or generic equivalent) on March 5, 2012 and January 30, 2013 (Doc. 30, Ex. 1, p. 318/450).

LeDee weighed 127 pounds on February 22, 2013 (Doc. 30, Ex. 1, pp. 315-317/450). In May 2013, LeDee complained he was not being given a 3500 calorie per

day diet and his weight was dropping (Doc. 30, Ex. 1, p. 310/450). LeDee weighed 135 pounds on June 7, 2013 (Doc. 30, Ex. 1, p. 306/450). LeDee weighed 122.6 pounds on October 30, 2013 and complained of weight loss due to not getting enough food (Doc. 30, Ex. 1, p. 290-291/450 and Ex. 2, p. 395/450). LeDee weighed 132 pounds on June 5, 2014 (Doc. 30, Ex. 2, p. 394/450). LeDee weighed 124 pounds on November 10, 2014 (Doc. 30, Ex. 2, p. 388/450; Doc. 30, Ex. 3, p. 34/37).

## Law and Analysis

### Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure mandates that the Court shall grant a summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Paragraph (e) of Rule 56 also provides the following:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials-including the facts considered undisputed-show that the movant is entitled to it; or (4) issue any other appropriate order.

Local Rule 56.2W (formerly 2.10W) also provides that all material facts set forth in a statement of undisputed facts submitted by the moving party will be deemed admitted for purposes of a motion for summary judgment unless the opposing party controverts those facts by filing a short and concise statement of material facts as to which that party contends there is a genuine issue to be tried.

In this regard, the substantive law determines what facts are "material." A material fact issue exists if a reasonable jury could return a verdict for the nonmoving party. However, the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to preclude summary judgment; there must be evidence on which the jury could reasonably find for the plaintiff. See Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999), cert. den., 528 U.S. 906 (1999).

If the movant produces evidence tending to show that there is no genuine issue of material fact, the nonmovant must then direct the Court's attention to evidence in the record sufficient to establish the existence of a genuine issue of material fact for trial. In this analysis, the Court reviews the facts and draws all inferences most favorable to the nonmovant. See Herrera v. Millsap, 862 F.2d 1157, 1159 (5th Cir. 1989). However, mere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient, therefore, to defeat a motion for summary judgment. See Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir. 1992), cert. den., 506 U.S. 825 (1992).

Evidence of Injury

CCA was ordered by the District Judge to file a motion for summary judgment on the issue of injury to clarify whether or not LeDee would be able to demonstrate any injury or damage, assuming he could establish liability (Doc. 84). CCA filed a new motion for summary judgment, relying on the medical evidence and affidavits previously filed in record. No new evidence was submitted with CCA's new motion for summary judgment (Doc. 91).

As found in the District Court's ruling, the issue of CCA's liability is not resolved.[2] As noted in the previous Report and Recommendation, LeDee complained in November 2011 that Pat Thomas had told him that his prescribed diet and Boost had to be approved by CCA; the response to his complaint was that the doctor discontinued his Boost on October 28, 2011 (Doc. 30, Ex. 1, p. 5/450). LeDee's medical records from WCC also include correspondence between Dr. Michael Hegmann, an Arizona internist employed by CCA, and RN Ami Brunson at WCC. Brunson asked Dr. Hegmann, on January 3, 2012 and February 13, 2012, for approval of the therapeutic diet and shakes prescribed by Dr. Kuplesky for LeDee; Brunson noted that Dr. Hegmann had not answered the previous emails on the subject (Doc. 30, Ex.

---

[2] CCA's policies (submitted by defendant Trinity (Doc. 48-4)) state that a "therapeutic/special diet" is "a diet prepared and served to inmates/residents according to the orders of the treating physician or as directed by the responsible health authority" (Policy 11-1.3) (Doc. 48-4, p. 8/28). CCA's policies further state that prescriptions for therapeutic/special diets should be specific and complete, furnished in writing, rewritten annually, and the Health Services Administrator or designee must ensure that the Food Service Manager is provided an updated therapeutic diet roster on a weekly basis (Policy 11-1.4(H)(2)) (Doc. 48-4, p. 14/28). Inmates/residents on any therapeutic/special diet shall be monitored regularly to ensure compliance with the prescribed diet (Policy 11-1.4(H)(5))(Doc. 48-4, p. 14/28).

Benjamin Sweat, a food service manager employed at Winn by Trinity Services Group, Inc., stated in an affidavit that CCA specifies the menu for all meals served to inmates and that Trinity prepared meals for LeDee in accordance with the Nutrition Support Diet prescribed for him by the WCC medical department (Doc. 48-4). Sweat contends LeDee's name was on the most recent diet roster (in 2015) and indicated he was to be provided a Nutritional Support Diet, and that, if LeDee did not receive his special meal, it was because he did not notify Trinity's tray line supervisor about his prescription diet when he passed through the tray line (Doc. 48-4). Sweat contends that he has received reports about LeDee opting to eat a regular, unrestricted meal and going through the tray line twice (to eat a second regular meal), instead of asking for his prescribed meal (Doc. 48-4). Therefore, Sweat's affidavit indicates that LeDee was sometimes eating even more calories than prescribed.

Laurie Leclair, a dietician employed by Trinity Services Group, Inc., stated in an affidavit that she "investigated" LeDee's allegations and was told by CCA and Trinity personnel that LeDee had received meals with additional calories (Doc. 48-3). Leclair further stated in her affidavit that LeDee's medical records show he weighed 131 pounds on January 22, 2015 and 136 pounds on February 28, 2015 (Doc. 48-3). There are no 2015 medical records for LeDee in the record before this Court.

1, pp. 271-272/450). Dr. Hegman sent an unsigned approval on February 13, 2012 (Doc. 30, Ex. 1, p. 271/450).

CCA argues that LeDee has not shown that he is chronically underweight, regardless of whether CCA complied with his dietary prescriptions. According to CCA's summary of the previously adduced evidence, LeDee's average[3] recorded height was 5'11" (Doc. 91-2, p. 2/6), and he weighed:

| Date | Weight | BMI |
|---|---|---|
| December 13, 2005 | 139 pounds | 19.4 BMI |
| January 3, 2006 | 145 | 20.2 |
| July 11, 2006 | 142 | 19.8 |
| July 14, 2006 | 136 | 19.0 |
| August 15, 2006 | 148 | 20.6 |
| October 18, 2007 | 150 | 20.9 |
| September 22, 2008 | 131.6 | 18.4 |
| October 15, 2008 | 135 | 18.8 |
| December 1, 2008 | 136 | 19.0 |
| February 2012 | 127 | 17.7 |
| July 5, 2012 | 127.4 | 17.8 |
| November 1, 2012 | 122 | 17.0 |
| February 22, 2013 | 127 | 17.7 |
| June 7, 2013 | 135 | 18.8 |
| October 30, 2013 | 122.6 | 17.1 |
| June 5, 2014 | 132 | 18.4 |
| November 10, 2014 | 124 | 17.3 |

As CCA points out, there are no medical records for 2009-2011 that show LeDee's weight.[4] CCA argues that LeDee's alleged desirable weight of 200 pounds

---

[3] As noted by CCA in its brief, LeDee's medical records recorded his height at 5'10", 5'11", and 6'0". CCA contends LeDee's average recorded height was 5'11" and the "differences are not material in calculating the relevant BMI" (Doc. 91-2).

[4] There is no explanation as to why the medical records from WCC are incomplete in this respect. Since the medical records show that LeDee began receiving "nutritional support diets" due to weight loss at least by 2009, there should be records of LeDee's weight that indicated the need for the prescribed diet and showed whether the prescribed diet was successful or not.

9

would be "overweight" according to the Body Mass Index ("BMI").[5] However, regardless of what LeDee considers a desirable weight, the evidence of record shows that LeDee was been generally underweight since at least February 2012. According to the National Heart, Lung, and Blood Institute (of the National Institutes of Health), a BMI below 18.5 percent is underweight. Accordingly, LeDee must weigh at least 132.3 pounds to have a BMI of at least 18.5, at 5'11".

Nutrition support diets were prescribed for LeDee from 2009 through 2013, but he contends he did not receive them regularly. The medical records show LeDee lost weight from 2012 through 2014 and was almost consistently underweight. Although CCA contends in its brief that LeDee's weight went from 131 to 136 pounds from January to February 2015, LeDee's 2015 medical records are not before this Court. In any event, 131 pounds is underweight for a man who is 5'11" tall (see BMI chart above).

The evidence shows that LeDee was at normal, healthy weights in 2005 through 2008 and has been underweight since at least 2012, despite having been prescribed "nutrition support diets" since at least 2009. There are no records of LeDee's weight from the three years from 2009 through 2011, and the medical records for the three years from 2012-2014 show LeDee was recorded at a healthy, normal weight only once. The evidence thus circumstantially supports LeDee's claim that he

---

[5] Body Mass Index is a measure of body fat based on height and weight that applies to men and women. A Body Mass Index calculator is available at http://www.nhlbi.nih.gov/health/educational/lose_wt/BMI/bmicalc.htm (a service of the U.S. Department of Health & Human Services, National Institutes of Health).

10

did not receive many of his prescribed nutrition support diets and, if that is what occurred, demonstrates an injury.

Since there are no genuine issues of material fact as to whether LeDee lost weight and was chronically underweight since at least 2012, CCA's motion for summary judgment on the issue of injury (Doc. 91) should be denied.

## Conclusion

Based on the foregoing, IT IS RECOMMENDED that CCA's motion for summary judgment on the issue of injury (Doc. 91) be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 2(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the District Judge at the time of filing. No other briefs (such as supplemental objections, reply briefs etc.) may be filed. Providing a courtesy copy of the objection to the magistrate judge is neither required nor encouraged. Timely objections will be considered by the district judge before he makes a final ruling.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except

upon grounds of plain error. See Douglass v. United Services Automobile Association, 79 F.3d 1415 (5th Cir. 1996).

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana, this 21st day of March 2016.

Joseph H.L. Perez-Montes
United States Magistrate Judge